**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | |
|---|---|
| **JAMES BROCK PHILLIPS, III,** | * |
| | * |
| Plaintiff, | * |
| | *   Civil No. TMD 12-3135 |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| Defendant.[1] | * |

************

**MEMORANDUM OPINION GRANTING DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

James Brock Phillips, III ("Plaintiff"), seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 23).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. She is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

for Summary Judgment (ECF No. 23) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1965, has a high-school education, and previously worked as a construction worker. R. at 23, 501. Plaintiff applied for DIB and SSI on December 30, 2008, alleging disability beginning on July 1, 2001 (later amended to December 30, 2007), due to "left shoulder, bad disc at L5-S1, hepatitis C." R. at 14, 51-59, 97, 102. The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 26-28, 31-47. ALJ G.B. Arthur held hearings in Washington, D.C., on January 7, 2011, at which a vocational expert ("VE") testified (R. at 530-44), and on March 10, 2011, at which Plaintiff testified (R. at 497-529). On May 25, 2011, the ALJ issued a decision finding Plaintiff not disabled since the amended alleged onset date of disability of December 30, 2007. R. at 11-25. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on August 23, 2012. R. at 5-7, 10. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 24, 2012, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.  **State Agency Medical Consultants**

On February 27, 2009, L. Robbins, M.D., assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 380-87. Dr. Robbins opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 381. He occasionally could climb ladders, ropes, and scaffolds and frequently could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. R. at 382. Plaintiff had no manipulative, visual, communicative, or environmental limitations, however. R. at 383-84.

On April 9, 2009, D. Shapiro, Ph.D., completed a psychiatric review technique form ("PRTF") on which Dr. Shapiro found insufficient evidence of a mental impairment. R. at 388-401.

On September 9, 2009, P.H. Moore, M.D., assessed Plaintiff's physical RFC and opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 413. He occasionally could stoop and climb ladders, ropes, and scaffolds, but frequently could balance, kneel, crouch, crawl, and climb ramps and stairs. R. at 414. Plaintiff's ability to reach overhead was limited to lifting to waist level. R. at 415. Dr. Moore further opined that Plaintiff had no visual, communicative, or environmental limitations. R. at 415-16.

On October 19, 2009, L. Payne, Ph.D., evaluated on a PRTF Plaintiff's mental impairments under paragraph B of Listings 12.02, 12.04, 12.08, and 12.09 relating to organic mental disorders, affective disorders, personality disorders, and substance addiction disorders. R. at 430, 440.  Dr. Payne opined that Plaintiff's mental impairments caused him to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 440.  Dr. Payne did not find evidence to establish the presence of the criteria under paragraph C of these Listings.  R. at 441.  Accordingly, Dr. Payne assessed Plaintiff's mental RFC (R. at 426-29) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to (7) set realistic goals or make plans independently of others.  Plaintiff otherwise was not significantly limited.  R. at 426-27.

**B.     Ajit Kurup, M.D.**

On August 17, 2009, Dr. Kurup conducted a consultative examination of Plaintiff.  R. at 407-11.  Dr. Kurup concluded that Plaintiff "is presently not in a position to perform activities such as standing or walking for more than 30 minutes at a time[;] he can sit for one[]hour, not in a position to run or crawl."  R. at 409.

C.  **Hearing Testimony**

   1.  **VE Testimony**

Although Plaintiff's counsel was present, Plaintiff did not appear at the hearing on January 7, 2011, so the ALJ elicited testimony from the VE. R. at 530-44. According to the VE, Plaintiff's past work as a construction worker is skilled and very heavy.[3] R. at 535-36. In a series of six hypothetical questions posed by the ALJ to the VE, the VE testified about jobs available to someone with Plaintiff's same age, education, and work experience with varying functional limitations. R. at 536-43. In the seventh hypothetical question, the ALJ posed functional limitations of an individual who has

> above moderate limitations as far as completing a normal work day or work week because of either physical or psychological limitations and also [who] has to moderate, above moderate as far as performing at a consistent pace without an unreasonable length and number of rest periods and accepting instructions or responding appropriately to criticism from supervisors and interacting and getting along with co-workers and peers. And hypothetical number seven, really looks to a loss of 15 to 20 percent more of productivity as well.

R. at 539. The VE testified that there would be no competitive employment available to someone with these limitations. R. at 543.

   2.  **Plaintiff's Testimony**

Plaintiff testified at the hearing on March 10, 2011. R. at 497-529. In his decision, the ALJ reviewed Plaintiff's testimony as follows:

> [Plaintiff] noted by exhibit and testimony at the hearing that during the period under review he was able to engage in a broad range of activities that included the following [albeit he indicated that some things were true then but he was not doing them anymore or doing them but they were taking longer to do]: preparing simple meals, microwaveable items [tried now to be on his feet for only a minimal amount of time], puts clothes in the washer, watches TV [likes the

---

[3] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

> News Channels], shops at stores [not as often now], went fishing [no longer goes fishing now] could count change and if he had money pay bills and manage a checking and savings account [but now has no money to manage]; socialized with family and friends, by phone and in person, and went to family outings [but less now] could follow written instructions fairly well and was average at following oral communications [more difficult now] could pay attention for ¾ to 1 hour at a time [more of a problem as of the hearing], could interact with others [gets irritable because of the pain now etc.]
>
> . . . .
>
> [Plaintiff] testified to his various limitations.  He stated that he could walk half a mile without stopping during the period under review.  Despite attempts by counsel to have him reconsider this statement he held fast to it and the best the attorney could do was to have him qualify the statement by indicating that he was not doing the 1 ½ without stopping at a quick pace but slower.  He stated that he could lift less than twenty pounds but was certain no more than 20 pounds.  He stated that he could carry between five-to-ten pounds but no more than 10 pounds.  He stated that medication helps with pain but does not take all the pain away.  He stated that the pain in his back and shoulder occurs all the time.  He stated that it radiates to his left leg.  He stated that his doctor wants him to try physical therapy as a conservative measure.  He stated that he has not been referred to a neurologist.  He stated that he could sit for an hour and [a] half but then would have to walk around.  In response to one of his attorney's "questions" he stated that he needs to lie down several times during the day and has had to do this every day during the period under review. . . . When confronted again with his activities {e.g. walking a mile and a half without stopping etc} he stated that he can do all those things indicated because he has good stamina to do things but has lots of pain.

R. at 19-22 (thus in original) (citation omitted); *see* R. at 119-26, 501-27.

The Court reviews other portions of the record more fully in its discussion of Plaintiff's arguments below.  *See infra* Part VI.

### III

### Summary of ALJ's Decision

On May 25, 2011, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of December 30, 2007; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the

6

requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a final inspector, bench worker, finisher, final assembler, or addresser. R. at 16-24. The ALJ accordingly found that he was not disabled from December 30, 2007, through the date of the decision. R. at 25.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] cannot climb ladders, ropes or scaffolds, be exposed [to] hazardous heights or hazardous moving machinery, or be exposed to extreme temperature changes as a precautionary measure. He retains the ability to occasionally climb stairs and ramps, to balance, to stoop, to [kneel] and to crouch, but does not retain the ability to perform work involving crawling. He requires low stress work (work requiring no more than moderate attention, concentration, persistence and pace for prolonged periods). He experiences moderate pain. He must avoid concentrated exposure to excessive vibration, humidity and wetness. He is precluded from work requiring the use of push/pull controls with legs. He must not lift or carry objects above shoulder height. . . . He requires the option to alternate between sitting and standing such that no more than half an hour is required to either sit or stand at any one time. He has moderate limitations as to completing a normal workday or workweek without interruptions from psychological and/or physical limitations, and as to performing at a constant pace without an unreasonable number and length of rest periods. He should have no direct, immediate contact with the general public on a regular basis, but is not precluded from all contact with the general public. He has moderate limitations as to accepting instructions and responding appropriately to criticism from supervisors and interacting and getting along with co-workers and peers.

R. at 20-21.[4]

The ALJ found that Plaintiff's severe impairments included degenerative disc disease, shoulder pain, depression, and anxiety. R. at 17. In considering the severity of Plaintiff's mental

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

7

impairments, the ALJ found that Plaintiff had moderate restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties regarding concentration, persistence, or pace; and experienced no episodes of decompensation of extended duration. R. at 19-20. Because the criteria of paragraphs B and C of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 ("Listing 12.04") were not satisfied, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04. R. at 19.

Further, regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." R. at 22.

The ALJ also weighed the opinion evidence in the record, giving (1) "greater weight" to the opinion evidence of the state agency medical consultants "because it is generally consistent with the medical record and clinical findings" and (2) "little weight" to Dr. Kurup's opinion because "the limitations proposed by Dr. Kurup were refuted by [Plaintiff's] testimony" and because "the limitations are not consistent with the record." R. at 22-23.

IV

**Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

---

in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## **Substantial Evidence Standard**

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[6] ("SSR") 96-8p. Pl.'s Mem. Supp. Mot. Summ. J. 4-6, ECF No. 20-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 6. Plaintiff's assertion is without merit.

Plaintiff first maintains that the ALJ failed to set forth a narrative discussion under SSR 96-8p, contending that the ALJ did not explain the evidence upon which he relied to support his RFC assessment, citing *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006).

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

However, "SSR 96-8p only requires *consideration* of all [seven functional] factors [relating to sitting, standing, walking, lifting, carrying, pushing, and pulling], not *enumeration* of all the factors." *Banks v. Astrue*, 537 F. Supp. 2d 75, 84 (D.D.C. 2008). SSR 96-8p "does not require written articulation of all seven strength demands." *Id.* at 85. Accordingly, "a written function-by-function analysis is not required." *Id.*; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." (citing SSR 96-8p)).

In this case, the ALJ discussed in narrative form the records of Plaintiff's examining sources. R. at 17-18, 22. The ALJ further found that the opinions of the state agency medical consultants were "generally consistent with the medical record and clinical findings." R. at 23. The ALJ also considered Plaintiff's credibility when determining his RFC. R. at 21-22. Thus, the ALJ's function-by-function assessment and narrative discussion were proper. *See Brown v. Astrue*, Civil Action No. TMD 09-1358, 2011 WL 3047635, at *2 (D. Md. July 22, 2011); *Walter v. Astrue*, Civil No. JKS 08-639, 2009 WL 2584817, at *4 (D. Md. Aug. 19, 2009) (concluding that ALJ's "function by function" assessment was adequate because ALJ evaluated medical facts and opinions, as well as claimant's testimony and credibility, in narrative discussion).

Plaintiff further asserts that the ALJ failed to explain in the decision certain physical limitations contained in the ALJ's RFC assessment. Pl.'s Mem. Supp. Mot. Summ. J. 8-9, ECF No. 20-1 (citing R. at 20). The burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must

explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))).  In this case, the ALJ found that Plaintiff's RFC had greater exertional, postural, and environmental limitations than those opined by the state agency medical consultants, and Plaintiff "points to no medical evidence that would change the RFC." *Finch ex rel. Finch v. Astrue*, Civil Action No. TMD 08-2706, 2012 WL 748383, at *3 (D. Md. Mar. 6, 2012).  Plaintiff accordingly fails to demonstrate prejudice from the claimed error.  *See* SSR 85-15, 1985 WL 56857, at *6-7 ("Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. . . . If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . . [L]imitations on the ability to crawl would be of little significance in the broad world of work.  This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees)."); SSR 83-14, 1983 WL 31254, at *2 ("Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . . [T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).").  Even if the ALJ had erred, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to

remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Rather, "[i]f it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (Posner, J.); *see Bautista v. Astrue*, Civil No. TJS-11-1651, 2013 WL 664999, at *6 (D. Md. Feb. 22, 2013).

In any event, substantial evidence supports the ALJ's physical RFC assessment. The ALJ considered Plaintiff's shoulder pain and limited his reaching, lifting, and carrying abilities. R. at 23. The ALJ also noted Plaintiff's need to get up frequently and adjusted the sit/stand option and other limitations. R. at 23. The ALJ further acknowledged the exacerbation of Plaintiff's shoulder and back pain by extreme weather conditions, as well as Plaintiff's testimony that he could walk for a half mile and sit for 1½ hours at a time. R. at 21, 22, 518, 523-24. In addition, although the ALJ discounted Dr. Kurup's opinion regarding Plaintiff's ability to walk and sit, the ALJ did note the doctor's opinion that Plaintiff could stand for 30 minutes at a time, but could not crawl. R. at 22, 407, 409. In short, substantial evidence supports the assessment of Plaintiff's physical RFC by the ALJ.

Plaintiff next contends that the ALJ's findings regarding his moderate mental limitations were erroneous. Pl.'s Mem. Supp. Mot. Summ. J. 9-10, ECF No. 20-1 (citing R. at 21, 426-29, 440). Plaintiff first asserts that the ALJ "failed to identify in the record the evidence which supports his definition of the term 'moderate.'" *Id.* at 10. According to Plaintiff, "there is no indication in the record that the definitions of the term 'moderate' utilized by the [ALJ] were in any manner consistent with the term 'moderate' utilized by the State Agency physician." *Id.* (citing R. at 426-29, 440).

The ALJ stated in the decision:

> "Moderate" recognizes a limitation or limitations that a claimant has physically or mentally but the claimant is still able to function satisfactorily while above moderate to marked is a finding that there is a substantial loss of functional abilities. While moderate from a mental standpoint precludes the attention and concentration required for high stress work and complex work, it is not at a level of severity that precludes the attention and concentration required for less stressful work of an unskilled or semi-skilled nature involving using common sense while following instructions.

R. at 21 n.1. The ALJ also provided the same definition of "moderate limitation" in his hypothetical questions to the VE. R. at 536-37.[7] In light of this definition of "moderate limitation," the VE testified about a number of unskilled jobs available in the national economy. R. at 540-43.

In assessing Plaintiff's mental RFC, Dr. Payne found that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; (6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to (7) set

---

[7] According to the hearing transcript, the ALJ advised the VE that

> moderate is defined to *include* the attention and concentration required for high stress work and complex work but not at a level of severity and magnitude less stressful work [sic] of an unskilled or semi-skilled nature involving using common sense when following instructions whether or not it's physical or mental, you know, the moderate is as I defined it.

R. at 536-37 (emphasis added). The Court finds that, in context, the appearance of the term "include" rather than "preclude" is a transcription error.

realistic goals or make plans independently of others. R. at 426-27. Dr. Payne further explained in Section III of the mental RFC assessment form that Plaintiff is "able to understand and follow at least simple instructions," "is likely to function best with routine tasks that can be completed at his own pace," "is likely to function best with tasks that do not require group cooperation," and "may function best with tasks that require little or no independent decision making." R. at 428. In other words, Dr. Payne opined that Plaintiff was limited to simple, routine tasks. Accordingly, Plaintiff does not demonstrate prejudice from the ALJ's failure to include Dr. Payne's opinion regarding Plaintiff's limitation to simple, routine tasks. *See Farrell v. Colvin*, Civil No. TMD 11-2995, 2014 WL 1764928, at *14 (D. Md. Apr. 30, 2014) (limiting claimant to "simple, routine, and unskilled tasks" accounts for moderate limitations in maintaining concentration, persistence, or pace resulting from mental impairments).

Plaintiff next contends that the ALJ's definition of the term "moderate" contradicts the ALJ's step two determination that Plaintiff has "severe" impairments. Pl.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 20-1. According to Plaintiff, the ALJ's "definition of the term 'moderate' to mean the ability to function satisfactorily contradicts the definition of a 'severe' impairment which requires a significant limitation in the ability to perform basic work activities." *Id.* at 11.

As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the ALJ

17

must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the ALJ must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for an ALJ to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.*; *see Walker v. Colvin*, No. C13-3021-MWB, 2014 WL 1348016, at *7 (N.D. Iowa Apr. 3, 2014) ("A finding of a severe impairment at Step Two does not require the ALJ to provide related functional limitations at Step Four.").

> In any event,
>
> the critical issue on appeal is *not* the precise definition of "moderate" but whether the ALJ was properly able to assess [Plaintiff's] RFC to determine: whether [he] was able to perform [his] past job; or in the alternative, whether there were other jobs available for [him] in the national economy. To that end, the ALJ had a [VE] determine, based on the definition of the RFC found by the ALJ, whether [Plaintiff] would be employable. The [VE] was able to sufficiently incorporate the disabilities outlined by the ALJ and determine that [Plaintiff] would be able to find employment in the national economy.

*Beene v. McMahon*, 226 F. App'x 348, 350 (5th Cir. 2007) (per curiam) (citations omitted); *see Cantrell v. McMahon*, 227 F. App'x 321, 322 (5th Cir. 2007) (per curiam) (finding substantial evidence that VE understood degree of limitation at issue in assessing what level of work person with claimant's RFC could perform in light of ALJ's definition of "moderate" as "there are some moderate limitations, but the person can still perform the task satisfactorily," which was consistent with regulations). Furthermore, Plaintiff's counsel did not object at the hearing to the ALJ's definition of the term "moderate." "[I]f Plaintiff's counsel found the ALJ's terminology to lack clarity, he was afforded an opportunity to ask the ALJ to clarify at the administrative

hearing, but did not do so." *Justus v. Astrue*, 2:12-CV-126, 2013 WL 503137 (S.D. Ohio Feb. 8, 2013), *report and recommendation adopted*, 2:12-CV-126, 2013 WL 941336 (S.D. Ohio Mar. 8, 2013). Plaintiff's arguments regarding the definition of "moderate limitation" used by the ALJ in this case are, therefore, without merit.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**. The Commissioner's decision is **AFFIRMED**. A separate order shall issue.


Date: August 15, 2014                                /s/
                                                     Thomas M. DiGirolamo
                                                     United States Magistrate Judge